DAY and another, Respondents, vs. GUMAER and another,
Appellants.

*October 3 — October 20, 1891.*

*Logs and lumber: Sale: Shortage: Evidence.*

Defendants sold and delivered to plaintiffs certain logs banked upon a
river, warranting the accuracy of the scale made by them, which
showed 19,038 logs containing 2,305,397 feet of lumber. Plaintiffs
drove the logs to the mill where they were sawed, and the mill
scale showed but 15,210 logs containing 1,179,370 feet. In an action
for damages for the shortage, the mill scale was in part not prop-
erly verified. Plaintiffs testified that they had searched the river
for stranded logs, but it was shown that at one point millions of
feet of logs were jammed in piles to a great depth, and that among
them might be many of the logs in question. There was also evi-
dence that plaintiffs did not use proper diligence to make a clean
drive or to hold the logs driven. *Held,* that the accuracy of the
defendants' scale was not successfully impeached as to the number
of the logs; but the properly verified mill scale of most of the logs
sawed, together with evidence that the logs thus scaled were a fair
average of all those delivered, might be considered in determining
the average quantity of lumber in each log so delivered, and would
sustain a verdict fixing the shortage at a quantity not greater than
that indicated by the difference between the two scales in this
respect.

APPEAL from the Circuit Court for *Marathon* County.
In the spring of 1887 plaintiffs purchased a lot of logs
of defendants. Such logs were then banked upon Spirit
river, a tributary of the Wisconsin river. As they were
delivered upon the bank, the logs were scaled by one
Burns, who was employed by defendants. This scale shows
19,038 logs, containing 2,305,397 feet of lumber, which is a
trifle over eight and one-fourth logs to 1,000 feet. The
plaintiffs paid for the logs according to such scale at the
rate of $5.75 per thousand feet, which was the contract
price therefor.

The plaintiffs claim that defendants undertook and war-
ranted that the logs contained the quantity of lumber

at which they were scaled by Burns; and that defendants agreed, if the logs fell short of such scale, they would make good the deficiency to plaintiffs. The plaintiffs also claim that there was a shortage of over 1,000,000 feet in the lumber cut from the logs. This action was brought to recover damages for such alleged shortage and breach of warranty.

The answer of defendants denies the alleged warranty, and avers that Burns' scale was correct, and that plaintiffs purchased the logs by such scale, after a careful examination thereof and test of its accuracy.

Under the contract, the logs were delivered to plaintiffs on the roll-ways upon which they were banked, and the plaintiffs drove them, or a large portion of them, down the Spirit and Wisconsin rivers to Wausau, where they were sawed into lumber for the plaintiffs at the mill of Barker & Stewart. The testimony tends to show that 14,702 of the logs were thus sawed during the season of 1887, containing, according to the mill scale, 1,137,560 feet of lumber; 471 thereof, containing 38,930 feet, were thus sawed in 1888; and 37 logs, containing 2,880 feet, in 1889. The aggregates of these sums are 15,210 logs, containing 1,179,370 feet of lumber. A computation shows this to be an average of 12.9 logs to 1,000 feet of lumber. The plaintiffs gave testimony tending to show that no considerable number of logs were delivered to them under the contract beyond the 15,210 above mentioned. Testimony was also introduced by plaintiffs tending to prove the alleged warranty of the accuracy of Burns' scale, and the agreement of defendants to make good any shortage therefrom.

The trial of the action resulted in a verdict for plaintiffs for $4,539. A motion for a new trial was denied, and judgment entered for plaintiffs, pursuant to the verdict. Defendants appeal from the judgment.

For the appellants there were briefs by *Cate, Jones & Sanborn*, and oral argument by *G. W. Cate*.

For the respondents there was a brief by *Silverthorn,*
*Hurley, Ryan & Jones,* attorneys, and *Bardeen, Mylrea &
Marchetti,* of counsel, and oral argument by *W. C. Silver-
thorn* and *C. V. Bardeen.*

LYON, J.   Two questions raised by the pleadings were
litigated on the trial.   These are: (1) Did defendants war-
rant the accuracy of Burns' scale of the logs? and, if so,
(2) Was any shortage proved?   The jury answered both of
these questions in the affirmative, else they could not have
found for plaintiffs.   As to the first question, the learned
counsel for defendants conceded in his argument that the
testimony was sufficient to support a finding that the war-
ranty was made as claimed by plaintiffs.   This concession
was advisedly made, for there can be no doubt the testimony
fully supports such finding.

The jury assessed damages at $4,539.   They were in-
structed, if they found for plaintiffs, to allow interest at
seven per cent. on damages from the time plaintiffs de-
manded of defendants a settlement for the shortage, which
demand the proofs show was made one year before the
trial.   Plaintiffs paid defendants for 2,305,397 feet at $5.75
per thousand.   A computation based upon these *data* will
show that the jury found a shortage of 737,739 feet, which,
at $5.75 per thousand feet, amounts to $4,242.   Add inter-
est for one year ($297), and we have $4,539, which is the
amount of the verdict.   Hence the jury allowed the defend-
ants for 1,567,658 feet of logs delivered under the contract.
This is nearly 400,000 feet in excess of the mill scale.

Does the testimony of the alleged shortage support the
verdict?   This question involves an inquiry as to the num-
ber of the logs delivered to plaintiffs, and the quantity of
lumber contained in them.   Burns' scale showed 19,038
logs.   The mill scale showed only 15,210.   The logs were
delivered to plaintiffs as they were banked on Spirit river,
and they took upon themselves the obligation and risk of

driving the logs to the Wausau mill. The only proof plaintiffs gave to impeach Burns' scale as to the number of logs was the mill scale and certain testimony that they searched the rivers for stranded logs. The proof of the mill scale of 1888 is defective, in that one or more of the persons who made portions of it were not called as witnesses, and so the scale was not properly verified. Moreover, it was conclusively proved that at one point in the Wisconsin river, where these logs were driven, there were ten or twelve million feet of logs stranded upon the rocks, and jammed together in piles of great depth. Although plaintiffs searched there for the logs in question, it is perfectly obvious from the testimony that hundreds of them might have been in those piles without being discovered or discoverable. It is reasonable to believe that many of the logs in question were in those piles. These defects in the proofs, taken in connection with testimony given on the trial which tended strongly to show that the plaintiffs failed to use proper diligence to make a clean drive or to hold the logs after they were driven, lead us to the conclusion that plaintiffs did not successfully impeach Burns' scale as to the number of the logs, and that the jury would not have been justified in finding that defendants did not deliver to plaintiffs 19,038 logs. We must assume the jury did its duty, nothing appearing to the contrary, and hence that they charged plaintiffs with that number of logs. It will therefore be considered a verity in the case that defendants delivered to the plaintiffs, under the contract, 19,038 logs.

As already stated, the jury found that the logs delivered to plaintiffs contained only 1,567,658 feet of lumber. This is an average of 82⅓ feet per log, or about 12⅛ logs to the 1,000 feet. The mill scale showed an average of about 12.9 logs to the 1,000 feet, which is more favorable to the plaintiffs than the finding of the jury. We are opinion that the

Day and another vs. Gumaer and another.

mill scale, although worthless for the purpose of fixing the number of logs delivered to plaintiffs, may properly be considered in determining the average quantity of lumber in each log so delivered, or the average number of logs required to cut 1,000 feet of lumber. The mill scale of most of the logs sawed at Barker & Stewart's mill was properly proved, and under the testimony we think the jury might properly find that the logs thus scaled were a fair average of all the logs delivered to plaintiffs under the contract. Such being the case, it was competent for the jury to decide between the Burns scale, which was 121 feet per log, or about $8\frac{1}{4}$ logs to the 1,000 feet of lumber, or the mill scale, which, as we have seen, was about 12.9 logs per 1,000 feet, and to fix the amount of lumber contained in such logs according to either scale or at any intermediate point. The jury have fixed such quantity at an intermediate point between the two scales, and the testimony fully sustains the verdict in that behalf.

Several errors are assigned upon certain rulings of the court on objections to testimony. Many of these rulings are manifestly correct. If any of them are not, we are unable to perceive how they could affect the verdict or harm the defendants. The charge of the court seems to state the law of the case correctly. Further reference to these alleged errors is unnecessary. We find in the record no reason for disturbing the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

WINSLOW, J., took no part.